UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

 TERRY PROVOST-HARVEY,

        Plaintiff,

      v.                                        1:06-CV-1128

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

      Plaintiff commenced this action seeking judicial review of a decision by the

Commissioner of Social Security denying disability insurance benefits ("DIB").  Plaintiff

requests that this Court reverse the decision and remand the matter to the

Administrative Law Judge to further develop the record.  The Commissioner seeks to

affirm the decision.  This Court has jurisdiction to review an unfavorable decision of the

Commissioner under 42 U.S.C. § 405(g).

## I.    FACTS

Procedural History

      Plaintiff alleges that she became disabled on March 8, 2002 due to fibromyalgia,

depression, and panic disorder.  (R. at 13; Pl.'s Br., Dkt. No. 7, at 5).  On July 29, 2002,

Plaintiff filed an application for DIB under Title II of the Social Security Act, codified at

42 U.S.C. § 423.  (R. at 44-46).  This application was denied and Plaintiff requested a

hearing, which was held on January 29, 2004.  (R. at 23-27, 223, 432-49).

Administrative Law Judge ("ALJ") Carl Stephan issued an unfavorable decision on

March 12, 2004.  (R. at 213-22).  Upon review, the Appeals Council vacated the ALJ's

decision and remanded the case for a new hearing, which was held on August 25,

2005.  (R. at 194, 225-27, 450-83).  On October 5, 2005, ALJ Stephan found that

Plaintiff was not disabled.  (R. at 12-20).  This decision became the final decision of the

Commissioner when the Appeals Council denied review on August 4, 2006.  (R. at 4-6,

8).

On September 20, 2006, Plaintiff filed a complaint in the United States District

Court for the Northern District of New York pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the Commissioner's decision.  (Dkt. No. 1).  The Commissioner

answered on January 9, 2007.  (Dkt. No. 6).

Non-Medical Evidence

Plaintiff was forty-two years old on the alleged onset date of March 8, 2002.  (R.

at 44).  She completed high school and two years of college, and has past relevant

work experience as a custodian and sales clerk.  (R. at 53, 58, 66-72, 238-39).

Plaintiff testified that she suffered from "constant pain and weakness throughout

[her] entire body."  (R. at 436).  She also alleged daily hand and foot numbness.  (R. at

461).  Plaintiff stated that she has difficulty with anxiety, that her "throat closes" and she

has panic attacks which make her feel like "the walls are closing in."  (R. at 457).  As a

result, she stays away from stores and social settings.  (R. at 457).  Plaintiff also

testified to limitations in concentration.  (R. at 457-58).  She stated that she has to read

2

things three to four times before understanding them and that she forgets where she is going and has to leave herself notes.  (R. at 457-58).

Plaintiff testified that she took Methotrexate and Arava for arthritis, Procardia for poor circulation, and Maxalt for migraines.  (R. at 439-40).  Plaintiff also took several medications for depression and anxiety, including Paxil, Wellbutrin, and Zoloft.  (R. at 439-40, 458).  Eventually Plaintiff went off of all psychiatric medication because she felt it did not help her.  (R. at 459).  Plaintiff stated that she was totally unable to lift or carry, and could not push appliances such as a vacuum.  (R. at 438-39).  She also stated that she could walk about a tenth of a mile without difficulty and that she could stand for a "couple of minutes" without feeling pain.  (R. at 443).  She testified that since quitting her job in March of 2002, she has not looked for work.  (R. at 442).  Plaintiff participated in no physical therapy or exercises, and was never treated by a psychologist or psychiatrist for mental conditions.  (R. at 444).  Her family physician, Dr. Jeffrey Stone, prescribed her antidepressant medications.  (R. at 459).

In terms of daily activities, Plaintiff testified that she got up every morning and took her dog out for a walk, "once or twice" around her apartment building.  (R. at 441-42). She maintained a driver's license and drove about twice a month.  (R. at 453).  She stated that she could do no housekeeping except some dusting and making the bed. (R. at 436-38, 442).  She was able to bathe, feed, and dress herself as well as take care of her personal hygiene.  (R. at 446).

Medical Evidence

*Dr. Edward Merzig*

Plaintiff saw treating rheumatologist Dr. Edward Merzig on June 3, 2002,

complaining of joint pain and pain in her neck, shoulders, upper arms, wrists, hands, fingers, upper back, knees, ankles, feet, toes, thighs, and lower legs.  (R. at 322).  She also complained of fatigue, malaise, sleeplessness, and depression.  (R. at 322).  Upon physical examination, Plaintiff had tenderness in the small and large joints, with tenderness and stiffness of the sacroiliac joints, shoulder joints, elbow joints, and ankle joints.  (R. at 324).

Plaintiff treated with Dr. Merzig through June of 2005.  (R. at 128-65, 181-92, 271-80, 293-320, 327-44, 396-402, 405-08).  Physical examination consistently found tenderness and stiffness of both sacroiliac joints, shoulder joints, wrist joints, metacarpophalangeal ("MCP") joints, proximal interphalangeal ("PIP") joints, distal interphalangeal ("DIP") joints, hip joints, knee joints, ankle joints, and metatarsophalangeal ("MTP") joints.    (R. at 275, 277, 324, 333, 397).  Examinations also showed full ranges of motion in Plaintiff's extremities, negative straight leg raising ("SLR") tests, and normal neurological findings.  (R. at 269, 275, 277, 324-25, 333, 397).  Plaintiff's condition fluctuated, with Dr. Merzig repeatedly noting that Plaintiff was "doing well" or had "improved" since the last visit.  (R. at 276, 280, 290, 292, 294, 296, 304, 306, 310, 318, 330, 334, 335-36, 338, 342, 396, 400, 402, 407).

X-rays performed in January 2005 showed mild disc narrowing at L4-5-S1, mild facet sclerosis, and Grade 1-2 sacroiliitis.  (R. at 406).  An MRI taken in April of 2005 showed mild degenerative disc disease at L3-4-5, which had not changed since an April 24, 2004 MRI.  (R. at 406).

*Annette Payne, Ph.D.*

Plaintiff was examined by state agency psychologist Annette Payne on August

4

20, 2002.  (R. at 111-14).  Dr. Payne noted that Plaintiff's speech was fluent and clear, her thought processes were coherent and goal-directed with no evidence of hallucinations, delusions or paranoia, her affect and mood were anxious and depressed, her sensorium was clear, and she was alert and oriented to time, place and person.  (R. at 112-13).  Her attention and concentration were impaired due to emotionality and she had some trouble with serial 3's, but was able to perform simple calculations.  (R. at 113).  Her recent and remote memory skills were grossly intact and her cognitive functioning was assessed as "probably in the average range."  (R. at 113).  Her judgment and insight were fair.  (R. at 113).

Dr. Payne diagnosed Plaintiff with depressive disorder, mild to moderate panic disorder with agoraphobia, and pain disorder associated with her psychological and medical condition.  (R. at 114).  Dr. Payne opined that Plaintiff was able to follow and understand simple instructions, and consistently perform simple rote tasks under supervision.  (R. at 113).  Plaintiff was assessed as having problems with attention and concentration, difficulty learning new tasks and performing complex tasks and making appropriate decisions, and difficulty relating to others and dealing with stress.  (R. at 113-14).  Dr. Payne assessed Plaintiff's psychiatric difficulties as "mildly to moderately limiting," but noted that Plaintiff was capable of managing her own funds.  (R. at 114).  Dr. Payne opined that Plaintiff would benefit from counseling.  (R. at 114).  On June 15, 2004, Dr. Payne examined Plaintiff again, with identical findings except to add that Plaintiff had moderate social anxiety.  (R. at 262-65).

*Dr. Amelita Balagtas*

Dr. Amelita Balagtas performed a consultative orthopedic examination on August

20, 2002.  (R. at 115-17).  Plaintiff complained of burning joint and muscle pain all over her body including her neck and back, which was aggravated by walking and "a lot of movements."  (R. at 115).  Plaintiff reported being able to engage in self-care, grooming, dressing, and limited driving.  (R. at 115).  Physical examination found Plaintiff had a slow gait and could heel/toe walk.  (R. at 116).  Range of motion ("ROM") in her cervical spine was limited to forty degrees of extension and flexion and there was tenderness over the posterior paracervical muscles and both trapezius muscles; ROM of the upper extremities was full and strength was 5/5; forward flexion of the lumbar spine was limited to thirty degrees by pain in the low back and there was tenderness over the lumbar spine and lumbar paraspinals; and ROM was full at the lower extremities with 5/5 strength.  (R. at 116).  Dr. Balagtas found that "[b]ased on [the] evaluation, [Plaintiff] would have some limitations in activities that require bending, lifting, prolonged sitting, prolonged standing, walking and any undue physical exertions." (R. at 117).

Dr. Balagtas examined Plaintiff again on March 10, 2005.  (R. at 353-55).  Dr. Balagtas reported the same physical restrictions as her prior examination, with the addition that Plaintiff would be limited in overhead reaching.  (R. at 355).  On March 29, 2005, Dr. Balagtas completed a medical source statement in which she opined that Plaintiff could occasionally and frequently lift and/or carry ten pounds, stand and/or walk for at least two hours in an eight-hour workday, sit for less than six hours in an eight-hour workday, and push and/or pull to the extent indicated by Plaintiff's lifting and carrying restrictions.  (R. at 356-57).  Dr. Balagtas also found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, and was limited in

6

reaching in all directions.  (R. at 357-58).  In support of her opinion, Dr. Balagtas cited limitations in ranges of motion in the cervical and lumbar spine, and paracervical and lumbar spine tenderness.  (R. at 357).

*Dr. Norman Romanoff*

Plaintiff began treating with Dr. Norman Romanoff, a rheumatologist, in November of 2005.  (R. at 429-30).  Dr. Romanoff assessed "probable fibromyalgia like syndrome" and "doubt[ed] inflammatory rheumatic disease or inflammatory spondyloarthropathy."  (R. at 430).  Dr. Romanoff recorded an essentially unremarkable physical examination, noting that there was no swelling or destructive changes of any peripheral joints except for some scattered minimal crepitation.  (R. at 430).  Plaintiff also had limited lumbar spine ROM on forward flexion.  (R. at 430).  Dr. Romanoff prescribed Flexeril for pain.  (R. at 430).

In January of 2006, Dr. Romanoff noted no areas of joint swelling or destructive changes of the joints, reduced ROM in the lumbar spine with no objective abnormality of curvature or spasm, unremarkable SLR test, no evidence of significant hip or shoulder pathology, scattered tenderness over the axial skeletal sites without objective findings, and full strength throughout.  (R. at 427).  Dr. Romanoff noted that he "could find no indication or data to support the use of anti-rheumatic" medication.  (R. at 427).  Nevertheless, he prescribed Trazodone for musculoskeletal pain.  (R. at 427-28).  In April of 2006, Dr. Romanoff assessed "no significant evidence of inflammatory disease with findings most consistent with depression, anxiety and fibromyalgia."  (R. at 426).

*Dr. Jeffrey Stone*

Dr. Jeffrey Stone, one of Plaintiff's treating physicians, advised in a letter dated

7

January 18, 2006 that he continued to treat Plaintiff's depression, anxiety, sleep deprivation, migraines, and rheumatoid arthritis.  (R. at 410).  He noted that her most recent visit had been on January 18, 2006 and that her primary diagnosis was anxiety.  (R. at 410).  He opined that because of her mobility limitations and psychological problems, Plaintiff was "unable to maintain a job position that will give her economic self-sufficiency," and that this would "continue for an indefinite period of time."  (R. at 410).

Although Dr. Stone indicated that he had been treating Plaintiff for fifteen years, the only treatment notes in the record are from examinations dated April 29, 2002 and November 26, 2002.  (R. at 92-93, 125-26).  On April 29, 2002, Dr. Stone noted that Plaintiff was able to focus and concentrate and had no hallucinations, suicidal or homicidal ideation.  (R. at 125).  Paxil was prescribed for depressive and anxiety symptoms.  (R. at 125).  On November 26, 2002, Plaintiff complained of a headache but stated she could "not stand" her headache medication because of its flavor.  (R. at 126).  She stated that Paxil was effective and that she was happy with it.  (R. at 126).  On August 8, 2002, Dr. Stone provided a report which indicated that, in lieu of an office revisit and assessment, Plaintiff was functioning at about eighty-five percent of her full capacity.  (R. at 93).

*Dr. Richard Goodwin*

Dr. Richard Goodwin, an orthopedist, reviewed Plaintiff's file at the request of the ALJ and issued a written opinion, along with medical source statement, on April 20, 2005.  (R. at 385-93).  He concluded that based on a review of the documents, he was "unable to confirm any objective findings on physical examination or laboratory studies

8

which would fulfill any of the Guidelines of the Social Security Administration." (R. at 386). Dr. Goodwin indicated that there were no medical impairments established by the medical evidence, and specified that there were "no findings meeting [the] description of medical impairments." (R. at 387). He opined that Plaintiff had no limitations in lifting, carrying, sitting, standing, or walking, and no postural, manipulative, visual/communicative, or environmental limitations. (R. at 391).

*Dr. Aaron Satloff*

Dr. Aaron Satloff completed a medical source statement regarding Plaintiff's ability to do mental work-related activities on April 24, 2005. (R. at 378-84). This assessment found that Plaintiff had no limitations in understanding, remembering, and carrying out instructions. (R. at 379). Dr. Satloff also found that Plaintiff had no problems responding appropriately to supervision, coworkers, and work pressures, and found overall that Plaintiff's mental impairments had no affect whatsoever on any of Plaintiff's capabilities. (R. at 380). Dr. Satloff based this report on the findings of Drs. Stone and Payne. (R. at 380; see R. at 92-93, 111-14, 262-65).

*Physical Residual Functional Capacity Assessment*

A physical residual functional capacity ("RFC") assessment was completed by Dr. Leue, an agency physician, on August 28, 2002. (R. at 118-23). Dr. Leue found that Plaintiff retained the RFC to lift twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours an eight-hour workday; sit for about six hours in an eight-hour workday; and push and/or pull to the extent indicated by Plaintiff's lifting and carrying restrictions. (R. at 119). In support of this assessment, he noted that Plaintiff showed tenderness in multiple joints, limited ROM of the neck and

low back, tenderness in the neck and low back but no spasm, full ROM of the joints in the extremities, intact fine motor activity, 4.5/5 grip strength, and no joint effusion, inflammation, or instability.  (R. at 119).  Dr. Leue found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl; he noted no manipulative, visual, communicative, or environmental limitations.  (R. at 119-20).

## II.    STANDARD OF REVIEW

A court examining a denial of disability benefits must undertake a two-step review.  First, a court must determine whether the administrative law judge applied the correct legal standards.  Rosado v. Sullivan, 805 F. Supp. 147 (S.D.N.Y. 1992)(*citing* Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).  Second, a court must decide whether the ALJ's findings of fact are supported by substantial evidence.  42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).

The substantial evidence standard presents a low threshold.  Substantial evidence is evidence that a reasonable person would find adequate to support a conclusion.  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)(*citing* Richardson v. Perales, 402 U.S. 389, 401 (1971)).  There need not be a preponderance of evidence.  Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).  A reviewing court may find substantial support although there is contradictory evidence permitting conflicting inferences.  Snell v.Apfel, 177 F.3d 128, 132 (2d Cir. 1999)(*citing* Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)).  Indeed, under this standard, the same body of evidence may adequately support contradictory findings.  Schauer, 675 F.2d at 57.  A reviewing court may not examine the evidence *de novo* or substitute

its own interpretation for that of the ALJ.  Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

The opinion of a treating physician is entitled to controlling weight if the opinion is supported by objective medical findings and not contradicted by substantial evidence in the record.  20 C.F.R. § 1527(d)(2); Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983).  However, the evaluations of non-examining State agency medical and psychological consultants may constitute substantial evidence.  See Schisler v.Sullivan, 3 F.3d 563, 568 (2d Cir. 1993)(holding that opinions of non-examining physicians are substantial evidence if they are in turn supported by evidence in the record).  An ALJ must treat such evaluations as expert opinion evidence of non-examining sources.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *1; 20 CFR 404.1527(f).  This treatment extends to consultants' RFC assessments.  SSR 96-6p, at *4.  State agency consultants are experts in evaluating the medical issues of disability claims.  Id. at *2.  However, because such consultants do not have a treating relationship with the claimant, and because they might be unduly influenced by institutional demands, the ALJ gives their opinions weight only insofar as the record supports.  Id. at *3.

**III. DISCUSSION**

A.  Governing Law

A court may grant disability insurance benefits only if an individual meets insured status criteria.  42 U.S.C. § 423(a).  Moreover, an individual must be "disabled."  Id. at § 423(A)(1)(E).  Under the Social Security Act, an individual is disabled if he or she is

unable to engage in "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. at 423(d)(1)(A).

To determine whether an individual is disabled under the Act, the Commissioner undertakes a five-step analysis.  First, the Commissioner decides whether the applicant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  If not, the Commissioner considers whether the applicant has a "severe" impairment that significantly limits his or her ability to do "basic work activities."  Id. at § 404.1520(a)(4)(ii), 404.1520(c).  If the applicant alleges more than one impairment, the Commissioner must individually evaluate each impairment for severity.  See id. at § 404.1520(a)(4).  However, an ALJ's failure to make specific findings as to each impairment is harmless error if the record clearly reflects that the ALJ has considered each impairment before deciding that the applicant's condition is not severe.  See Smith v. Sullivan, 726 F. Supp. 261 (D. Neb. 1989).

Third, if the Commissioner finds that an individual's impairment or combined impairments are severe, the Commissioner next determines whether these limitations meet or equal the impairments listed in Appendix 1 of the Regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If an impairment meets or equals one of the listings, the Commissioner considers the applicant to be disabled.  Id.  If not, the Commissioner then considers the applicant's RFC[1] and whether he or she can still do past relevant

---

[1]   The Act defines "residual functional capacity" as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations

work.  Id. at § 404.1520(a)(4)(iv)._____

In determining an individual's residual functional capacity, the Commissioner must consider objective medical evidence, including medical facts, diagnoses, and opinions.  Id. at § 404.1545(a)(3).  A decision must also account for the applicant's testimony, including an individual's description of his symptoms such as pain.  Id.; see also Charlebois v. Comm'r, No. 02 Civ. 686, 2003 WL 22161591, at *8 (N.D.N.Y. Sept. 12, 2003).  The Commissioner must offer substantial evidence of every physical demand listed in the regulations to demonstrate that an individual can perform the full range of work at a particular physical level.  See Charlebois, 2003 WL 22161591, at *8; LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990).

To find a residual functional capacity for light work, the Commissioner must find that an individual is able to lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. § 404.1567(b).  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  Id.  To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities.  Id.  If someone can do light work, they are presumed able to do sedentary

_____

that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).  The Commissioner particularly focuses on whether the individual meets physical exertional requirements of sedentary, light, medium, heavy, or very heavy work.  20 C.F.R. § 404.1567.

13

work,[2] unless there are additional limiting factors such as loss of fine dexterity or

inability to sit for long periods of time.  Id.

The applicant bears the initial burden of proving that he or she is disabled within

the meaning of the Social Security Act.  42 U.S.C. § 423(d)(5)(A); Reyes v. Sec'y of

Health and Human Servs., 807 F. Supp. 293, 298 (S.D.N.Y. 1992).  The applicant

carries this burden by proving the first four steps of the analysis.  Rivera v. Schweiker,

717 F.2d 719, 722 (2d Cir. 1983).  Once an individual has proved that an impairment

prevents him or her from returning to previous work, the burden shifts to the

Commissioner to prove that there exists other work in the national economy to which

the applicant can adjust despite his or her limitations.  20 CFR § 404.1520(a)(4)(v); see

Rivera, 717 F.2d at 722–23; Reyes, 807 F. Supp. at 298.  Such work must exist in

significant numbers in the national economy.  20 CFR § 404.1560(c).  To determine

whether other work exists to which a individual can adjust, the Commissioner considers

an individual's RFC together with the individual's age, education, or work experience.

Id. at § 404.1560(b)(3).  If an individual is not capable of adjusting to other work, the

individual is disabled.  Id. at § 404.1520(a)(4)(v).  If an individual is capable of adjusting

to other work, such individual is not disabled.  Id.

_____

[2] To find a residual functional capacity for sedentary work, the Commissioner
must find that a individual is able to lift at least ten pounds at a time, carrying articles
like files, ledgers, and small tools.  20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL
374185, at *3.  An individual must be able to sit for at least six hours, with only routine
breaks.  SSR 96-9p, at *6.  A morning break, a lunch period, and an afternoon break at
approximately two-hour intervals constitute routine breaks.  Id.; see also Halloran v.
Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)(noting that sedentary work does not require an
individual to remain motionless for six hours).  An individual must also be able to walk
and stand for up to two hours.  SSR 96-9p, at *6.

To prove that other work is available, the Commissioner may, under appropriate circumstances, rely on the Medical-Vocational Guidelines included in Appendix 2 of Subpart P of section 404.  Grey v. Chater, 903 F. Supp. 293, 297–98 (N.D.N.Y. 1995). The Guidelines account for the applicant's residual functional capacity, age, education, and work experience.[3]  Comparing these factors, the Guidelines indicate whether substantial gainful work exists to which the applicant can adjust.

The Guidelines are generally dispositive on the disability decision.  Grey, 903 F. Supp. at 298.  If the Guideline factors accurately describe an applicant's mental and physical condition, the Commissioner may rely exclusively upon these factors.  Id.  The Guidelines accurately describe an applicant's condition if substantial evidence supports the Commissioner's finding that the applicant can fully perform the exertional requirements of the work.  See id. at 299–302 (ordering remand because evidence did not support that the applicant could stand for two hours of a workday); see also Nelson v. Bowen, 882 F.2d 45, 49 (2d Cir. 1989).  If not, the Commissioner must call a vocational expert to testify whether other work exists that the applicant can perform within his limitations.  See Nelson, 882 F.2d at 45.

B. Plaintiff's Arguments

Plaintiff argues that this Court should reverse the Commissioner's decision and

---

[3] The Guidelines classify work by five different categories—sedentary, light, medium, heavy, and very heavy—based upon the physical exertional requirements of that work.  20 C.F.R. Part 404, Subpart P, App'x 2.  The Commissioner will place an individual into one of these categories based on his or her residual functional capacity. Id. § 200.00(a).  The Commissioner then considers the applicant's age, education, and previous work experience to determine whether her or she is disabled. Id.

remand to the Commissioner due to legal errors and insufficient evidence.  (Plaintiff's Br., Dkt. No. 7 at 12-18).  Plaintiff contends that the ALJ failed to (i) properly assess her RFC, (ii) properly elicit vocational expert testimony, and (iii) properly evaluate Plaintiff's credibility.  (Plaintiff's Br. at 12-18).

C.  Analysis

*1.  Whether the ALJ Erred in Determining Plaintiff's Residual Functional Capacity.*

Plaintiff contends that the ALJ's finding that Plaintiff retained the RFC to perform a significant range of light work is not supported by substantial evidence.  (Pl.'s Br. at 15-17).  Specifically, Plaintiff argues that the ALJ failed to incorporate the full extent of Plaintiff's exertional and non-exertional limitations into his RFC determination.  Id.

In this case, the ALJ found that Plaintiff retained the RFC to perform a significant range of light work.  (R. at 16-17).  He determined that she was able to lift ten pounds frequently and twenty pounds occasionally; sit, stand, and/or walk for at least six hours in an eight-hour workday; occasionally crouch, crawl, balance, kneel, climb, and stoop, with no constant repetitive use of the upper extremities; and that she had occasional problems with stress, understanding, remembering and carrying out detailed instructions, maintaining attention and concentration, and dealing with others.  (R. at 16-17).

The ALJ's RFC finding is supported by substantial evidence.  The record contains evidence that a reasonable person would find adequate to support this finding.  See Williams, 859 F.2d at 258.  Although Plaintiff's treating rheumatologist, Dr. Merzig, did not offer an opinion of Plaintiff's functional capacities, several assessments of

16

Plaintiff's functional capacities appear in the record.  Dr. Stone, Plaintiff's family physician who treated Plaintiff for fifteen years, opined that Plaintiff was operating at "85 percent" of full capacity.  (R. at 93).  He did not provide any explanation for this vague opinion.  (R. at 93).  Dr. Goodman, an orthopedic expert consulted by the ALJ, reviewed the medical record and concluded that Plaintiff had no functional limitations whatsoever. (R. at 391-93).  He based this conclusion on his opinion that Plaintiff in fact suffered from no medically determinable impairments.  (R. at 387).  Dr. Balagtas completed a medical source statement which concluded that Plaintiff could occasionally and frequently lift and/or carry ten pounds, stand and/or walk for at least two hours in an eight-hour workday, sit for less than six hours in an eight-hour workday, and push and/or pull to the extent indicated by Plaintiff's lifting and carrying restrictions.  (R. at 356-57).  Dr. Balagtas also found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, and was limited in reaching in all directions.  (R. at 357-58).

The ALJ's decision contains a thorough discussion of the above opinions as well as a discussion of the objective medical evidence in this case.  The ALJ concluded that Dr. Balagtas' opinion was not supported by substantial evidence of record, citing the objective findings of Drs. Merzig and Romanoff as well as diagnostic imaging tests, and declined to adopt it.  (R. at 16-17).  The Court agrees that substantial evidence does not support the full extent of the restrictions imposed by Dr. Balagtas.  Dr. Merzig's treatment notes, which are the most consistent and long-term treatment records in the administrative transcript, contain no definitive diagnoses, objective injuries, or pathology.  (R. at 128-65, 181-92, 271-80, 293-344, 396-402, 405-08).  This deficiency

17

was recognized by Dr. Goodman in his medical source statement.  (R. at 385).

Additionally, Dr. Romanoff's treatment records revealed no swelling or destructive

changes of any peripheral joints, full muscle strength with no spasm, and unremarkable

SLR tests.  (R. at 425-30).

Finally, diagnostic imaging in the form of X-rays and an MRI showed only mild

disc narrowing at L4-5-S1, mild facet sclerosis, Grade 1-2 sacroiliitis, and mild

degenerative disc disease at L3-4-5.  (R. at 406).  None of these findings were

considered significant by Dr. Goodman, nor did they prevent Dr. Stone from assessing

Plaintiff at eighty-five percent capacity.  Despite this relative lack of objective medical

evidence, however, the ALJ chose not to fully credit Dr. Goodman's assessment that

Plaintiff suffered from no functional limitations whatsoever.  (R. at 16-17).  Instead, the

ALJ reached an RFC assessment which represented a middle ground between Dr.

Goodman's and Dr. Balagtas' opinions.  (R. at 16-17).  In doing so, the ALJ also

considered Plaintiff's subjective complaints of pain and limitations.  (R. at 16).  The

ALJ's ultimate RFC assessment was also fully consistent with the physical RFC

assessment completed by agency physician Dr. Leue.  (R. at 118-23).  Considering the

entire record, the Court finds that substantial evidence supports the ALJ's assessment

of Plaintiff''s physical capacities.

As to Plaintiff's mental capacities, Dr. Satloff found that Plaintiff's functional

capacities were not affected at all by her mental impairments.  (R. at 378-84).  Dr.

Payne found that Plaintiff was able to follow and understand simple instructions and

consistently perform simple rote tasks under supervision.  (R. at 113).  She also

assessed Plaintiff as having problems with attention and concentration, difficulty learning new tasks and performing complex tasks and making appropriate decisions, and difficulty relating to others and dealing with stress, but opined that Plaintiff could manage her own funds.  (R. at 113-14).  She found Plaintiff's psychiatric impairments to be "mildly to moderately limiting."  (R. at 114).

Dr. Payne's findings were incorporated into the ALJ's RFC determination; he found that Plaintiff had occasional problems with stress, understanding, remembering and carrying out detailed instructions, maintaining attention and concentration, and dealing with others.  (R. at 17).  The Court concludes that the psychiatric examinations provide substantial evidence which supports the ALJ's RFC determination with regard to Plaintiff's mental capacities.  There is no additional evidence in the record, beyond Plaintiff's own subjective complaints, that would indicate more restrictive limitations than those assessed by Dr. Payne.

The ALJ's conclusions regarding Plaintiff's limitations in physical and mental abilities were thus supported by substantial evidence.  Plaintiff's argument that the ALJ failed to properly assess her credibility will be addressed below.

2.  *Whether the ALJ Properly Elicited Vocational Expert Testimony.*

Plaintiff argues that the ALJ failed to properly pose a hypothetical question to the vocational expert ("VE").  (Pl.'s Br. at 16).  Specifically, Plaintiff argues that the ALJ erred by failing to incorporate the full extent of Plaintiff's limitations into the hypothetical posed to the VE.  Id.

The ALJ is entitled to rely on vocational expert evidence in deciding whether a

plaintiff retains the capacity to perform other work which exists in significant numbers in the national economy.  20 C.F.R. § 404.1566(e).  It is well-established that elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden at step five of the disability test to establish the existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable of performing.  Bapp v. Bowen, 802 F.2d 601, 604-05 (2d Cir. 1986); Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983); Dwyer v. Apfel, 23 F. Supp.2d 223, 229-30 (N.D.N.Y. 1998) (Hurd, M.J.) (citing Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)); see also 20 C.F.R. §§ 404.1566, 416.966.  Use of hypothetical questions to develop the vocational expert's testimony is also permitted, provided that the question incorporates the full extent of a plaintiff's physical and mental limitations.  Dumas, 712 F.2d at 1553-54.  If the limitations set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability.  Id.

In this case, the ALJ posed a hypothetical question to the VE which incorporated the ALJ's full RFC findings.  (R. at 470-75).  The Court has already determined that the ALJ's RFC assessment was supported by substantial evidence.  Because the ALJ's hypothetical included the full extent of physical and mental impairments determined to be accurate by the ALJ, and the existence of these limitations was supported by substantial evidence, the hypothetical was proper and the ALJ was entitled to rely on the VE's testimony.  See Dumas, 712 F.2d at 1553-54.

*3.  Whether the ALJ's Properly Evaluated Plaintiff's Credibility.*

Plaintiff argues that the ALJ failed to properly credit her subjective complaints of pain, and that this failure resulted in an erroneous credibility determination.  (Pl.'s Br. at 12-15).  The ALJ has discretion to appraise the credibility of witnesses, including testimony of a plaintiff concerning subjective complaints of pain.  See Mimms v. Heckler, 750 F.2d 180, 185-86 (2d Cir. 1984).  After considering a claimant's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject a claimant's subjective testimony.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (2007); Martone, 70 F. Supp. 2d at 151.

If the ALJ rejects a claimant's subjective testimony, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  Martone, 70 F. Supp. 2d at 151 (citing Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).  Where the ALJ's findings are supported by substantial evidence, the reviewing court must uphold the ALJ's decision to discount Plaintiff's subjective complaints of pain.  Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (citing McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701 (2d Cir. 1980).

In his decision, the ALJ discussed Plaintiff's subjective complaints of pain as they related to the entire medical record.  (R. at 16).  The ALJ concluded that Plaintiff's complaints were inconsistent with the objective medical findings as well as the medical opinions of record, and therefore found Plaintiff's complaints to be overstated.  (R. at 16).  The ALJ noted that Plaintiff testified to extensive physical limitations as well as

21

difficulties with concentration and memory.  (R. at 16).  Although the ALJ gave this testimony some consideration, he noted the opinions of Drs. Goodman and Stone, who found that Plaintiff suffered from very little if any functional limitations.

The ALJ's rationale for finding Plaintiff not fully credible is apparent from a reading of the decision.  Moreover, the Court finds that substantial evidence supports the ALJ's decision that the bulk of the objective medical evidence was inconsistent with the full extent of Plaintiff's subjective complaints.  Thus, the ALJ's finding that Plaintiff was not fully credible will not be disturbed on review.  Aponte, 728 F.2d at 591.

## IV. CONCLUSION

This Court AFFIRMS the final decision of the Commissioner of Social Security and DENIES the Plaintiff's request to remand the case for further reconsideration.

IT IS SO ORDERED.

Dated:March 13, 2008

Thomas J. McAvoy
Senior, U.S. District Judge